730 A.2d 873 (1999)
Melvin KAMEN, Plaintiff-Respondent,
v.
Abbey EGAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1999.
Decided June 14, 1999.
*874 Kristine M. Bergman, Ocean, for defendant-appellant (Ansell, Zaro, Grimm & Aaron, attorneys; Allison Ansell Ryan, of counsel and on the brief; Ms. Ryan and Ms. Bergman, on the brief).
Edward J. O'Donnell, Livingston, for plaintiff-respondent (Skoloff & Wolfe, attorneys; Mr. O'Donnell, of counsel and on the brief; Nancy C. Richmond, on the brief).
Before Judges BROCHIN, KLEINER[1] and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
Defendant Abbey Egan appeals from the entry of a final restraining order entered against her under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -33 (the Act), in favor of her father, plaintiff Melvin Kamen. She also appeals from the denial of her motion for reconsideration. We reverse.
This appeal arises out of cross-complaints in which each party accused the other of an act of domestic violence. Plaintiff's complaint, filed on June 17, 1997, was predicated upon an act of criminal trespass, N.J.S.A. 2C:18-3. Defendant's complaint, filed on June 18, 1997, was predicated upon grounds of harassment, N.J.S.A. 2C:33-4. A temporary restraining order was entered on each complaint.
At the final hearing plaintiff testified that he resided with defendant's three children, a house nurse for the children, and Barbara Rooney, his fiancee, whom he subsequently married. Plaintiff has custody of defendant's children. There is a visitation order which permits the childrens' father, Sean Egan, to have visitation on Saturday mornings between 9:00 a.m. and 12:30 p.m. supervised by plaintiff. According to plaintiff the order does not *875 mention defendant since she was living with plaintiff when the order was entered.[2]
On Sunday, June 8, 1997, plaintiff and defendant attended an unveiling at the grave site of plaintiff's mother-in-law who was also defendant's maternal grandmother. Plaintiff said there "was some remorse from the unveiling procedures," and defendant asked if she could visit the children that afternoon. Plaintiff, who was on his way to Great Britain that evening, testified that he told defendant she could not go to the home because her visitation day was Saturday. On the other hand, defendant testified that plaintiff had given her permission to exercise visitation that day. Plaintiff acknowledged that defendant had never been physically violent towards him or the children.
Rooney testified that she was upstairs bathing one of the children who had a high fever. She went downstairs and saw defendant and her sister in the kitchen. Defendant told her she wanted to see her children. Rooney responded that she told defendant she had had her visitation the previous day and that since plaintiff was not home to supervise the visitation, she asked defendant three times to leave. She said defendant responded "[i]t's my father's house, I'm not leaving, I want to see my children". Rooney acknowledged that defendant left when she threatened to call the police.
At the conclusion of the hearing the trial judge made the following terse finding:
Alright. I'm prepared to rule on the temporary restraining order sought to be made a permanent restraining order by Melvin Kamen. Based on the testimony that I've heard, it would appear that criminal trespass in violation, also in violation of the restraints that were in place I believe was June 8, have been met and, therefore, the temporary restraining order will be made a permanent restraining order.[3]
Defendant appeals contending (1) the record does not support a finding that an act of domestic violence occurred; (2) the trial judge erred in denying her motion for reconsideration.
Initially, we observe that in trials conducted without a jury the court must find the facts and state its conclusions of law. See R. 1:7-4(a). The failure of the trial judge to perform those functions constitutes a disservice to the litigants, the attorneys, and the appellate court. Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980). The trial court must clearly state its factual findings and correlate them with the relevant legal conclusions, and the failure to perform this function hinders appellate review. Ibid. Here, the findings of the judge were terse, making our task exceedingly difficult. We conclude that the judge implicitly resolved the credibility issues in favor of plaintiff and therefore found that defendant's request for permission to visit her children was denied. Based on that finding the judge correctly concluded that defendant had committed an act of criminal trespass by entering plaintiff's home knowing that she was not licensed or privileged to do so on that occasion. See N.J.S.A. 2C:18-3(a). However, that does not end the inquiry.
The Act is New Jersey's response to the problem of domestic violence, which is a term of art describing abusive and controlling behavior which injures its victim. Corrente v. Corrente, 281 N.J.Super. 243, 246-47, 657 A.2d 440 (App.Div.1995); Peranio v. Peranio, 280 N.J.Super. 47, 52-53, *876 654 A.2d 495 (App.Div.1995). The intent of the Act, as the name explains, was to deal with acts of domestic violence and to protect victims. The findings which undergird the Act are set forth at N.J.S.A. 2C:25-18:
The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.
The Act does not create a new class of offenses or proscribe acts which are not otherwise addressed by the criminal law. Corrente, supra, 281 N.J.Super. at 248, 657 A.2d 440; Peranio, supra, 280 N.J.Super. at 54, 654 A.2d 495. In defining acts of domestic violence the Legislature by N.J.S.A. 2C:25-19, has incorporated the following criminal statutes:

 (1) Homicide N.J.S.A. 2C:11-1 et seq.
 (2) Assault N.J.S.A. 2C:12-1
 (3) Terroristic threats N.J.S.A. 2C:12-3
 (4) Kidnapping N.J.S.A. 2C:13-1
 (5) Criminal restraint N.J.S.A. 2C:13-2
 (6) False imprisonment N.J.S.A. 2C:13-3
 (7) Sexual assault N.J.S.A. 2C:14-2
 (8) Criminal sexual conduct N.J.S.A. 2C:14-3
 (9) Lewdness N.J.S.A. 2C:14-4
 (10) Criminal mischief N.J.S.A. 2C:17-3
 (11) Burglary N.J.S.A. 2C:18-2
 (12) Criminal trespass N.J.S.A. 2C:18-3
 (13) Harassment N.J.S.A. 2C:33-4
 (14) Stalking N.J.S.A. 2C:12-10

[N.J.S.A. 2C:25-19.]
It is clear that the Legislature did not intend that the commission of any one of these acts automatically mandates the issuance of a domestic violence order. Corrente, supra, 281 N.J.Super. at 248, 657 A.2d 440; Peranio, supra, 280 N.J.Super. at 54, 654 A.2d 495. Domestic violence is ordinarily more than an isolated aberrant non-violent act. Indeed, the Act mandates that the court, in determining whether an act of domestic violence has occurred, consider the previous history of domestic violence between the parties including threats, harassment and physical abuse, N.J.S.A. 2C:25-29(a)(1), and the existence of immediate danger to person or property, N.J.S.A. 2C:25-29(a)(2). See Cesare v. Cesare, 154 N.J. 394, 402, 713 A.2d 390 (1998). While a single sufficiently egregious action may constitute domestic violence even if there is no history of abuse between the parties, a court may also determine that an ambiguous incident qualifies as domestic violence based on finding previous acts of violence. Ibid.
We recognize that our scope of review of the trial judge's fact-finding function is limited. Cesare, supra, 154 N.J. at 411, 713 A.2d 390. We must accept those findings when they are supported by adequate, substantial, credible evidence unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence as to offend the interests of justice. Id. at 412, 713 A.2d 390. In addition, we recognize that we *877 must accord deference to Family Court fact-finding in light of the Family Court's special jurisdiction and expertise in family matters. Id. at 413, 713 A.2d 390. Giving the trial judge the deference we must, we accept his fact-finding and conclude that defendant knew she had been denied permission to see her children after the unveiling, and that, therefore, defendant technically committed an act of trespass. However, we conclude that the judge erred in his legal conclusion that this single act of trespass, unaccompanied by violence or a threat of violence was sufficient to justify the issuance of a restraining order under the Act. Defendant's acts, although technically a trespass, did not involve violence or a threat of violence. Indeed, Rooney acknowledged that there was no violence and defendant ultimately left when she threatened to call the police. Plaintiff acknowledged that defendant has never exhibited violence towards him or the children. Under these circumstances we conclude that the acts complained of were nothing more than an ordinary domestic contretemps which the Act was never intended to address. Corrente, supra, 281 N.J.Super. at 250, 657 A.2d 440; Peranio, supra, 280 N.J.Super. at 56, 654 A.2d 495. This single act of trespass, unaccompanied by violence or a threat of violence is not the single act of egregious conduct contemplated by Cesare, supra.
The Act is intended to assist those who are truly the victims of domestic violence. It should not be trivialized by its misuse in situations which do not involve violence or threats of violence. In addition, we have previously expressed our concern that the Act may be misused in order to gain advantage in a companion matrimonial action or custody or visitation action. See N.B. v. T.B., 297 N.J.Super. 35, 42, 687 A.2d 766 (App.Div.1997); Murray v. Murray, 267 N.J.Super. 406, 410, 631 A.2d 984 (App. Div.1993). We note that while the complaints that are the subject of this appeal were pending, there was also a custody and/or visitation proceeding pending.
Reversed.
NOTES
[1] Judge Kleiner did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] Plaintiff testified that a hearing officer at a conference told defendant she did not have unlimited visitation but was subject to the same order as her husband since she was then living with her husband. Obviously, a hearing officer has no authority to modify a judicial order. The parties have not supplied us in their appendices with a visitation order and we decide this case based upon an assumption that there is no order limiting defendant's rights of visitation.
[3] The judge also dismissed defendant's cross-complaint filed against plaintiff.