# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0619-18T1

L.B.,

     Plaintiff-Respondent,

v.

R.B.,

     Defendant-Appellant.

_____

Submitted June 6, 2019 – Decided June 17, 2019

Before Judges Simonelli and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-0096-19.

The Tormey Law Firm LLC, attorneys for appellant (Brent Di Marco, of counsel and on the brief).

Respondent has not filed a brief.

PER CURIAM

     Defendant R.B. appeals from the August 7, 2018 final restraining order

(FRO) entered against him pursuant to the Prevention of Domestic Violence Act

of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35, based on harassment, N.J.S.A. 2C:33-4(a) and (b). We reverse and remand for the trial court to vacate the FRO.

Plaintiff is defendant's father. Defendant resided in his parents' home.[1] Several conflicts ensued between defendant and his parents' stemming from the parents' expectation that defendant abide by the rules of the home and defendant coming home late, sometimes intoxicated, or not coming home at all. Plaintiff alleged defendant pushed him and defendant's mother, was verbally inappropriate, and punched holes in the walls.

Plaintiff testified defendant made threats "constantly." When asked to specify the threats, plaintiff testified as follows:

> [PLAINTIFF]: My mother has a property in Boonton Township . . . and my mom passed last year . . . and the property is mine right now. And she still has a cat living at home, and we take care of her cat by feeding it. And [defendant], we were going around to animal shelters, what to do about the cat [who] is [fourteen] years old.
>
> . . . .
>
> And they told us, the cat is old, we should put it down. [Defendant] asked me and my wife what do you mean put her down? I have a gun. I can shoot the cat.
>
> THE COURT: Was there some discussion of that residence being burned down in some –

---

[1] Defendant's mother is not a plaintiff.

A-0619-18T1

[PLAINTIFF]:  Yes, he discussed it

. . . .

He said either knock [the house] down or burn it down, because that house has no value.  It's useless.  There is no one there.

THE COURT:  Now, that was part of your complaint.  I take it you thought it was not an appropriate reference to, to burn down the house?

[PLAINTIFF]:  Yes.  And then there is threatening and everything.  He make[s] threats constantly.

THE COURT:  I know your complaint references that.  Can you tell me what sort of threats have been said?

[PLAINTIFF]:  Well, my wife, who is from New York, she is an M.D. by profession, an OB/GYN and our son simply says, oh, you are not practicing medicine here.  What's the use?  You're nothing.

. . . .

And the same with me, my profession.  My profession is, I'm involved in fine fragrances and perfumery, and I have been out of work for some time now and I'm still looking for work, and he's asking why are you so long out of work? What are you doing at home?

[(Emphasis added).]

Plaintiff also testified he was concerned about the safety and well-being of members of the household:

A-0619-18T1

> Because we don't know when [defendant] will come home and he not only goes to his friend's to get drunk, but he goes over to a local bar restaurant . . . and we are not sure if he will get pulled over for [driving while intoxicated] or any other infraction. That's why we are scared what could happen to him, and what could he do to others. That's why. The health and safety is a matter of our concerns, Your Honor.

Plaintiff also described an incident between defendant and his mother where defendant closed a door on her right hand, causing an injury. Plaintiff provided no testimony that any of defendant's acts were intentional.

Defendant testified that the conflict with his parents stemmed from their berating him and disapproval of the girl defendant was dating. Defendant claimed he rejected his parents' ultimatum to stop dating the girl if he wanted to continue living in their home. He testified he closed the door on his mother's hand by accident and did not intend for that to happen or to hurt her. He also denied intentionally punching holes in the wall or saying he wanted to burn down his grandmother's house.

In his oral opinion, the trial judge noted the complaint was brought under the harassment statute and mentioned only the elements of N.J.S.A. 2C:33-4(a) and (b). N.J.S.A. 2C:33-4 provides, in pertinent part, that a person is guilty of harassment

> if, with purpose to harass another, he:

A-0619-18T1

a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so[.]

The judge said the elements of subsection (a) and (b) were satisfied based on plaintiff's testimony, but made no specific factual findings and no finding of a purpose to harass. The judge also made no finding that a FRO was necessary to protect plaintiff from an immediate danger or to prevent further abuse. The judge merely found there was a "risk of future high conflict."

Our review of a trial court's decision to enter a FRO in a domestic violence matter is limited. Peterson v. Peterson, 374 N.J. Super. 116, 121 (App. Div. 2005). "A reviewing court is bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "Reversal is warranted only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent,

relevant and reasonably credible evidence as to offend the interests of justice[.]'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts[.]" Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a), which incorporates harassment, N.J.S.A. 2C:33-4, as conduct constituting domestic violence. Id. at 125-26. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); see N.J.S.A. 2C:25-29(a)(1).

A finding of harassment requires proof that the defendant acted "with purpose to harass." N.J.S.A. 2C:33-4; see Silver, 387 N.J. Super. at 124. Although a purpose to harass may, in some cases, be "inferred from the

evidence," and may be informed by "[c]ommon sense and experience[,]" a finding by the court that the defendant acted with a purpose or intent to harass another is integral to a determination of harassment. State v. Hoffman, 149 N.J. 564, 577 (1997). We note that purposeful conduct "is the highest form of mens rea contained in our penal code, and the most difficult to establish." State v. Duncan, 376 N.J. Super. 253, 262 (App. Div. 2005). Its establishment requires proof, in a case such as this, that it was the actor's "conscious object to engage in conduct of that nature or to cause [the intended] result." N.J.S.A. 2C:2-2(b)(1). A plaintiff's assertion that the conduct is harassing is not sufficient. J.D. v. M.D.F., 207 N.J. 458, 484 (2011). Further, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Id. at 487.

When deciding the issues of intent and effect, we are mindful of the fact that

> harassment is the predicate offense that presents the greatest challenges to our courts as they strive to apply the underlying criminal statute that defines the offense to the realm of domestic discord. Drawing the line between acts that constitute harassment for purposes of issuing a domestic violence restraining order and those that fall instead into the category of "ordinary domestic contretemps" presents our courts with a weighty responsibility and confounds our ability to fix clear rules of application.

A-0619-18T1

[Id. at 475 (citation omitted).]

"[T]he decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." Id. at 484.

If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the factors set forth in [N.J.S.A. 2C:25-29(a)(1) to (6)], to protect the victim from an immediate danger or to prevent further abuse." Id. at 475-76 (quoting Silver, 387 N.J. Super. at 126-27). The factors which the court should consider include, but are not limited to:

> (1)   The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2)   The existence of immediate danger to person or property;
>
> (3)   The financial circumstances of the plaintiff and defendant;
>
> (4)   The best interests of the victim and any child;
>
> (5)   In determining custody and parenting time the protection of the victim's safety; and
>
> (6)   The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a).]

A-0619-18T1

Although the court is not required to incorporate all of these factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Cesare, 154 N.J. at 401-02 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)). Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment[,] and physical abuse[,]" and on "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995).

The court must exercise care "to distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence." R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017). The PDVA is not intended to encompass "ordinary domestic contretemps[.]" Corrente, 281 N.J. Super. at 250. Rather, "[t]he [PDVA] is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)).

A-0619-18T1

Here, the judge made no finding that defendant acted with the requisite purpose to harass, and such a finding cannot be inferred from the evidence. Plaintiff presented no evidence that defendant acted with a purpose to harass. Accordingly, in the absence of this "integral" finding of a purpose to harass, Corrente, 281 N.J. Super. at 249, the judge's determination that defendant committed the predicate act of harassment cannot stand and the FRO must be reversed and vacated. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5.2 on R. 5:7A (2019) ("A final restraining order cannot be sustained when a court fails to articulate the applicable subsection of the harassment statute and to provide the legal and factual basis for finding a purpose to harass.").

The FRO must also be reversed because the judge did not find that restraints were necessary "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. As the court explained in Silver, the finding of a predicate act satisfies only the first step in a two-step process. Id. at 126-27. Because "the Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order," plaintiff was obligated to prove and the judge was required to find that restraints

A-0619-18T1

were necessary to "protect the victim from an immediate danger or to prevent further abuse." Id. at 126-27.

Plaintiff provided no such proof and the judge made no such finding. Although the judge noted there was "a risk of high conflict," he engaged in no principled analysis of why he found that to be the case and made no evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (6). Absent an expressed holding, or other findings from which we might discern such an implicit determination, we must conclude that plaintiff failed to prove the need for an FRO even if the proofs permitted a finding that defendant committed the predicate act of harassment.

Reversed and remanded to the trial court to vacate the FRO.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0619-18T1