**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0503-18T3

J.M.,

     Plaintiff-Respondent,

v.

J.M.,

     Defendant-Appellant.

_____

     Argued September 24, 2019 – Decided October 2, 2019

     Before Judges Hoffman and Firko.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-0679-19.

     Nathan J. Mammarella argued the cause for appellant (Daniel M. Rosenberg & Associates, LLC, attorneys; Daniel M. Rosenberg and Nathan J. Mammarella, on the brief).

     Respondent has not filed a brief.

PER CURIAM

Defendant J.M. [1] appeals from an August 23, 2018 final restraining order (FRO) entered against him in favor of plaintiff, J.M., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on harassment, N.J.S.A. 2C:33-4. We reverse and remand for the trial court to vacate the FRO.

I.

The parties dated and resided together until August 2017. After their breakup, plaintiff testified that defendant sent her "a lot" of text messages stating he "loves" her and was "thinking of [her]." He stated he would leave her alone but then stated he wanted to reconcile. Plaintiff indicated that she never led defendant to believe their relationship would be rekindled. According to plaintiff, she blocked defendant's cell phone number but he sent her text messages from multiple random numbers. She thought defendant "got a little upset when he found out [she was] in a new relationship."

Out of frustration arising from defendant's repeated, unwanted text messages, plaintiff obtained a temporary restraining order (TRO) against him. She voluntarily dismissed the TRO on April 4, 2018, because she did not want

---

[1] We use initials to protect the parties' privacy interests in accordance with Rule 1:38-(d)(9).

A-0503-18T3

defendant to lose his job as a corrections officer, and he promised to leave her alone.

But plaintiff testified defendant continued to send her text messages and he made multiple attempts to see her by showing up at her place of employment unannounced with the intention of delivering gifts to her, such as perfume. On one occasion, plaintiff testified that defendant left a gift for her daughter on her car windshield. On August 2, 2018, plaintiff testified she saw defendant walking behind her when she went to her car for lunch. On another occasion, plaintiff testified defendant was hiding in between cars at her place of employment and confronted her. She testified he gave her a gift card for a "nail salon" or "Sephora" that she gave to a co-worker. A couple of weeks later, he sent her an "Edible Arrangement" at her place of employment.

Over the course of a year, plaintiff testified she received approximately 100 text messages from defendant. Because of defendant's continued, unwanted contacts, plaintiff testified that she suffered from "anxiety attack[s]" and problems in her new relationship.

Defendant testified he had to resolve outstanding issues with plaintiff, such as closing their joint PNC checking account, which he could not do unilaterally because of a lien on the account. He also testified that plaintiff's

3

vehicle was still insured under his automobile policy after the parties' break up and this issue had to be "squared away." He denied contacting plaintiff for romantic reasons. Defendant showed the judge a text message sent from plaintiff on his birthday, July 6, 2018, that said "Happy birthday, [J.M.]. May God bless you with many more." Defendant acknowledged sending plaintiff other "positive" text messages, such as "have a good day my sunshine, don't work too hard." Plaintiff replied, "good morning, [with a happy face], how are you?"

In his oral opinion, the judge noted the complaint was brought under the harassment statute but did not mention the elements of the statute or the subsection(s) applicable to this matter. N.J.S.A. 2C:33-4 provides, in pertinent part, that a person is guilty of harassment

> if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so[.]

The judge said the elements of harassment were satisfied based on plaintiff's credible testimony, but made no specific factual findings and no

A-0503-18T3

finding of a purpose to harass. The judge also made no finding that a FRO was necessary to protect plaintiff from an immediate danger or to prevent further abuse. The judge merely found: "One needs to learn that harassment over a long period of time does amount to harassment."

On appeal, defendant argues the judge did not fully analyze the N.J.S.A. 2C:25-29(a) factors; defendant's actions did not rise to the level of harassment because he did not have the purpose to alarm or annoy plaintiff; the judge improvidently relied on plaintiff's testimony stating that defendant put his hands on her in the past without mention of a past history of domestic violence in the complaint, depriving defendant of his due process rights; and the judge failed to clearly state his factual findings and correlate those findings with legal conclusions.

## II.

Our review of a trial court's decision to enter a FRO in a domestic violence matter is limited. Peterson v. Peterson, 374 N.J. Super. 116, 121 (App. Div. 2005). "A reviewing court is bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'"

5

L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "Reversal is warranted only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts[.]" Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a), which incorporates harassment, N.J.S.A. 2C:33-4, as conduct constituting domestic violence. Id. at 125-26. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of

A-0503-18T3

the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); see N.J.S.A. 2C:25-29(a)(1).

A finding of harassment requires proof that the defendant acted "with purpose to harass." N.J.S.A. 2C:33-4; see Silver, 387 N.J. Super. at 124. Although a purpose to harass may, in some cases, be "inferred from the evidence," and may be informed by "[c]ommon sense and experience[,]" a finding by the court that the defendant acted with a purpose or intent to harass another is integral to a determination of harassment. State v. Hoffman, 149 N.J. 564, 577 (1997). We note that purposeful conduct "is the highest form of mens rea contained in our penal code, and the most difficult to establish." State v. Duncan, 376 N.J. Super. 253, 262 (App. Div. 2005). Its establishment requires proof, in a case such as this, that it was the actor's "conscious object to engage in conduct of that nature or to cause [the intended] result." N.J.S.A. 2C:2-2(b)(1). A plaintiff's assertion that the conduct is harassing is not sufficient. J.D. v. M.D.F., 207 N.J. 458, 484 (2011). Further, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Id. at 487.

When deciding the issues of intent and effect, we are mindful of the fact that

A-0503-18T3

harassment is the predicate offense that presents the greatest challenges to our courts as they strive to apply the underlying criminal statute that defines the offense to the realm of domestic discord. Drawing the line between acts that constitute harassment for purposes of issuing a domestic violence restraining order and those that fall instead into the category of "ordinary domestic contretemps" presents our courts with a weighty responsibility and confounds our ability to fix clear rules of application.

[Id. at 475 (citation omitted).]

"[T]he decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." Id. at 484.

If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to (6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 475-76 (quoting Silver, 387 N.J. Super. at 127). The factors which the court should consider include, but are not limited to:

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

8

(4)  The best interests of the victim and any child;

(5)  In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

Although the court is not required to incorporate all of these factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'"  Cesare, 154 N.J. at 401-02 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)).  Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment[,] and physical abuse[,]" and on "whether immediate danger to the person or property is present."  Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995).

The court must exercise care "to distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence."  R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017).   The  PDVA  is  not  intended  to  encompass  "ordinary domestic

A-0503-18T3

contretemps[.]" Corrente, 281 N.J. Super. at 250. Rather, "[t]he [PDVA] is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)).

Here, the judge made no finding that defendant acted with the requisite purpose to harass, and such a finding cannot be inferred from the evidence. Plaintiff presented no evidence that defendant acted with a purpose to harass. Accordingly, in the absence of this "integral" finding of a purpose to harass, Corrente, 281 N.J. Super. at 249, the judge's determination that defendant committed the predicate act of harassment cannot stand and the FRO must be reversed and vacated. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5.2 on R. 5:7A (2019) ("A final restraining order cannot be sustained when a court fails to articulate the applicable subsection of the harassment statute and to provide the legal and factual basis for finding a purpose to harass.").

The FRO must also be reversed because the judge did not find that restraints were necessary "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. As the court explained in Silver, the finding of a predicate act satisfies only the first step in a two-step process. Id. at 126-27. Because "the Legislature did not intend that the

commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order," plaintiff was obligated to prove and the judge was required to find that restraints were necessary to "protect the victim from an immediate danger or to prevent further abuse." Id. at 126-27.

Plaintiff provided no such proof and the judge made no such finding. Although the judge noted there was "harassment over a long period of time," he engaged in no principled analysis of why he found that to be the case and made no evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (6). Absent an expressed holding, or other findings from which we might discern such an implicit determination, we must conclude that plaintiff failed to prove the need for an FRO, even if the proofs permitted a finding that defendant committed the predicate act of harassment.

Regarding the history of domestic violence, the judge made the limited finding that "there were physical altercations in the past." Our careful review of the record shows only one reference to a past history of domestic violence between the parties by virtue of plaintiff testifying: . . ."you put your hands on me back in August and I did not press charges." Defendant argues the judge erred in considering plaintiff's testimony on this issue. We agree. The record

is devoid of what exactly the history of domestic violence was other than the vague statement made by plaintiff during defendant's testimony.

N.J.S.A. 2C:25-29(a) permits the introduction of evidence of the "previous history of domestic violence." Here, the prior incident was not mentioned in the complaint. We have stated: "It constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint." J.F. v. B.K., 308 N.J. Super. 387, 391-392 (App. Div. 1998). The judge abused his discretion here by permitting and considering plaintiff's challenged testimony on a prior act.

Reversed and remanded to the trial court to vacate the FRO. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION