# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3849-18T2

N.D.,

    Plaintiff-Respondent,

v.

E.L.H.,

    Defendant-Appellant.

_____

Submitted April 27, 2020 – Decided May 11, 2020

Before Judges Sabatino and Sumners.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2487-19.

Attorneys Hartman Chartered, attorneys for appellant (Mark Alan Gulbranson, Jr., on the brief).

Respondent has not filed a brief.

PER CURIAM

    Defendant E.L.H. appeals the Family Part's entry of a Final Restraining

Order ("FRO") against him in favor of plaintiff N.D. under the Prevention of

Domestic Violence Act, N.J.S.A. 2C:25-17 to 35.[1]  The court entered the FRO on April 15, 2019, immediately following a trial that day at which plaintiff was self-represented and defendant was represented by his former attorney. Defendant, now represented by new counsel, argues the evidence was insufficient to support the FRO and that the trial court's findings were flawed and inadequate.  We affirm.

The record shows E.L.H. and N.D. began dating, in August 2017 and were in an on-and-off relationship for approximately sixteen months.  They did not live together but exchanged keys to each other's residences.  E.L.H. knew where N.D. worked and had visited her there previously.

In November 2018, after about a year of dating, N.D. broke up with E.L.H. over the phone.  That same night, before she had an opportunity to retrieve her spare house key from E.L.H., N.D. awoke to find him standing at the foot of her bed.  E.L.H. had used his key and unhooked the chain guard on her door to enter the house without N.D.'s permission.  N.D. did not call the police on this occasion, because E.L.H. was crying, and she did not believe at that time he

---

[1]  We use initials for the parties in accordance with Rule 1:38-3(d)(9) and N.J.S.A. 2C:25-33.

posed a threat to her. However, she made E.L.H. return her key and warned him never to show up again unannounced or she would call the police.

The couple thereafter reconciled and dated again until March 13, 2019, when they broke up for a second time. On March 16, N.D. went out to dinner with E.L.H. for his birthday, although the evening ended on a sour note. E.L.H. and N.D. continued to remain in contact, as friends.

On March 23, N.D. told E.L.H. that she was feeling sick. E.L.H. continued to call and text her multiple times throughout the day, but N.D. did not respond. N.D. testified that they did not have plans for that evening and that there was no discussion of E.L.H. coming to her house.

Nevertheless, E.L.H. arrived at N.D.'s door unannounced later that evening. N.D. did not answer the door when he knocked. E.L.H. testified that he became upset after seeing another man in the house through the "halfway opened" window blinds, though N.D. insisted that the blinds were always closed.

At this point, E.L.H. forced his way into the house with his shoulder, busting open the locked door and breaking the doorframe. N.D. attempted to push him out the door, but E.L.H. fought his way back inside two more times. N.D. began throwing objects at him in an effort to chase him out.

After N.D. was able to force him outside and shut the door, E.L.H. walked over to her car and kicked the driver's side mirror off the car. N.D. informed him she was calling the police and E.L.H. got in his car and left.

N.D. received a series of calls and voice messages from E.L.H. the following day, made from a variety of different phone numbers. E.L.H. testified that he called "to ask for the reason why this happened" and to offer to compensate her for the damage he caused to her door.

Following these events, N.D. filed a domestic violence complaint in the Family Part and obtained a temporary restraining order against E.L.H. An FRO hearing was thereafter conducted on April 15, 2019. Both N.D. and E.L.H. testified.

After considering the evidence, the trial judge accepted N.D.'s version of the events, expressing doubts about E.L.H.'s own narrative. He further concluded that E.L.H.'s conduct in breaking into N.D.'s residence constituted burglary, N.J.S.A. 2C:18-2, and thereby a predicate act under the domestic violence statute. See N.J.S.A. 2C:25-19(a)(11) (including burglary in the listing of eligible predicate offenses). The judge additionally found that E.L.H.'s course of conduct was a sufficiently egregious act to justify the need for judicial protection and granted the FRO.

4

In his unopposed appeal, E.L.H. argues that the entry of the FRO against him was erroneous as both a matter of fact and law. He contends there is insufficient evidence to support the court's finding of a "sufficiently egregious" predicated act of domestic violence under the Act. In addition, he argues the court failed to make the necessary finding that relief in the form of an FRO was necessary to protect N.D. from further abuse.

In reviewing these contentions on appeal, we defer substantially to the factual findings of the trial judge, who had the opportunity to assess the credibility and demeanor of the witnesses first-hand, so long as those findings are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). The deference is especially appropriate in reviewing the entry of an FRO in a domestic violence matter "[b]ecause of the family courts' special jurisdiction and expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413 (1988). Reversal is only warranted when the trial court's findings in Family Part bench trials are "so wide of the mark that a mistake must have been made." N.J. Div. of Youth and Family Servs. v. M.M., 189 N.J. 261, 279 (2007). To the extent the trial court's decision implicates questions of law, we independently evaluate those legal rulings de

novo.  See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

It is also well established that to establish an act of domestic violence under the Act, two facets must be proven by a preponderance of the evidence. First, the trial judge must find that "one or more predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred."  Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006); see also Cesare, 154 N.J. at 400-01.

In making this first assessment, the court must evaluate the predicate act "in light of the previous history of violence between the parties."  Cesare, 154 N.J. at 402 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1994)).  A court is "not obligated to find a past history of abuse before determining that an act of domestic violence has been committed in a particular situation."  Ibid.

Second, apart from establishing a predicate act, a plaintiff under the Act must show that "relief is necessary to prevent further abuse."  J.D. v. M.D.F., 207 N.J. 458, 476 (2011) (quoting N.J.S.A. 2C:25-29(b)).  See also Silver, 387 N.J. Super. at 127.

A-3849-18T2

Applying these well-settled standards, we affirm the trial court's determinations and its issuance of the FRO. We amplify that conclusion with only a few comments.

First, we are satisfied there is more than ample proof in the record to support the judge's finding by a preponderance of the evidence that E.L.H. committed the predicate act of burglary. As pertinent here, burglary is defined to include a defendant's unauthorized entry into a building with a purpose to commit a wrongful act once inside. N.J.S.A. 2C18-2(a); State v. Marquez, 277 N.J. Super. 162, 168-69 (App. Div. 1994). The wrongful purpose can be inferred from the circumstances. State v. Singleton, 290 N.J. Super. 336, 342-43 (App. Div. 1996).

Here, the circumstances reasonably indicate E.L.H. broke into N.D.'s home in order to disturb her peace and tranquility, despite her pervious assertions to him that she wanted to be left alone. The judge relied upon N.D.'s description of what had occurred, and, by contrast, did not adopt E.L.H.'s claim that he made his way into the house for completely benign reasons. His wrongful intent is further corroborated by his previous sudden and unauthorized entry into N.D.'s bedroom, and also by his violent and temperamental act of breaking off her car's side mirror.

A-3849-18T2

E.L.H. cites Kamen v. Egan, 322 N.J. Super. 222 (App. Div. 1999), in support of the proposition that "a single act of trespass unaccompanied by violence or a threat of violence [is] insufficient to warrant the issuance of an FRO." However, Kamen notably did not involve forced entry of any kind. In that case, an adult daughter entered her father's home to visit her children, of whom her father had custody, at a time outside her regularly scheduled visitation. Kamen, 322 N.J. Super. at 224-25. Her father was not home at the time, and his fiancé found the daughter waiting in the kitchen. Ibid. While the daughter initially refused to leave without seeing her children, she left after the fiancé threatened to call the police. Ibid.

This entirely non-violent exchange between the family members in Kamen is not comparable to E.L.H.'s actions during the March 23 incident. After breaking down the door, E.L.H. twice attempted to push past N.D. into the house, despite her efforts to force him back outside. Although Kamen did not involve property damage of any kind, E.L.H. left substantial damage in his wake. Not only was N.D.'s doorframe broken—with the door unable to close or lock—but E.L.H. also kicked the side mirror off her car door before leaving the scene. By inflicting such extensive damage, E.L.H.'s actions surely entailed aspects of past and potential future violence warranting the issuance of an FRO.

A-3849-18T2

There is also sufficient proof in the record to support the judge's conclusion that restraints were necessary for plaintiff's protection. This second determination "is most often perfunctory and self-evident." Silver, 387 N.J. Super. at 127. The Act does identify factors the court may consider in this regard, including any "previous history of domestic violence" between the parties and "the existence of immediate danger to person or property." N.J.S.A. 2C:25-29(a)(1)-(6). Because not every factor is relevant in every case, the Act "does not mandate that a trial court incorporate all of those factors into its findings." Cesare, 154 N.J. at 401-12.

The evidence was ample to support the court's determination that an FRO was necessary to prevent further abuse. E.L.H. places great emphasis on the lack of proven domestic violence between the parties. However, "[a]lthough it is clear that a pattern of abusive and controlling behavior is a classic characteristic of domestic violence . . . the need for an order of protection . . . may arise even in the absence of such a pattern" when a sufficiently egregious act has been committed. Silver, 387 N.J. Super. at 128.

By breaking and entering N.D.'s home, E.L.H.'s behavior went well beyond the "unpleasant encounter[s]" and "ordinary domestic contretemps" that can be inadequate to support the issuance of an FRO. Cf. R.G. v. R.G., 449 N.J.

9

Super. 208, 227 (App. Div. 2017); <u>Kamen</u>, 322 N.J. Super. at 228.  Rather, E.L.H.'s actions were sufficiently egregious to indicate that he posed an "immediate danger to person or property."

The trial court pointed to N.D.'s reasonable fear for her safety and home security as illustrative of that danger.  Although we acknowledge the court could have elaborated more on this subject in its oral post-trial opinion, it did not err in finding that sufficiently egregious conduct occurred, justifying the grant of the FRO.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION