# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0724-20

S.G.,

    Plaintiff-Respondent,

v.

L.B.S.,[1]

    Defendant-Appellant.

_____

        Submitted November 9, 2021 – Decided December 9, 2021

        Before Judges Currier and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-0236-21.

        Furlong and Krasny, attorneys for appellant (Scott A. Krasny, on the brief).

        Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect victims of domestic violence. R. 1:38-3(d)(9).

Defendant appeals from the final restraining order (FRO) entered against him in October 2020. Because plaintiff did not prove a predicate act of harassment or that she required a restraining order to protect her from an immediate danger or further abuse, we reverse.

The parties were in a relationship and had one child together. At the time of trial in October 2020, defendant had not seen plaintiff or the child since March 2019.

In her application for a temporary restraining order (TRO), plaintiff alleged the predicate act of harassment. She testified during the FRO trial that defendant had been harassing her for a year and a half using fake social media accounts. She presented the court with a previous application for a TRO that was denied[2] and eleven exhibits of social media posts and messages. The posts were under multiple names and written in a combination of English and Jamaican slang.

When the trial judge asked plaintiff how she knew defendant was behind the fake accounts, plaintiff replied in the following colloquy:

> PLAINTIFF: Based on previous messages that we had, so, I matched the messages.

---

[2] This exhibit was not moved into evidence and is not part of the record before this court.

THE COURT: I don't – I don't understand how you could have done that, so, tell me how you did it.

PLAINTIFF: Now, he has a particular way of texting.

THE COURT: Okay.

PLAINTIFF: And the spelling.

THE COURT: Okay.

PLAINTIFF: So, when I retraced those I realized it was him.

THE COURT: In other words, by the syntax, the way it was written –

PLAINTIFF: Right. And the sentences.

After further testimony, the trial judge again asked how plaintiff attributed the fake accounts to defendant. She replied, "He has his way of how he texts, as I told you before. His syntaxes . . . ." And later plaintiff stated, "As I said previously, I know his syntax and his type of texting."

Defendant testified that after plaintiff contacted his wife on social media in August 2019 to reveal the parties' relationship and the baby, his wife blocked her. Then plaintiff began using fake accounts to contact his wife. Defendant also asserted that plaintiff posted about him several times.

Defendant produced a social media post in which plaintiff threatened to call defendant's employer. This was posted one day before plaintiff applied for

the TRO. Defendant also testified that two of the fake accounts contacted him and he provided exhibits with those messages.

Defendant testified he pays child support and was not in arrears. Plaintiff did not dispute that testimony. Defendant stated that he had not been in contact with plaintiff since January 2020. And plaintiff did not permit him to see their child.

In assessing the parties' credibility, the trial judge found plaintiff was credible, stating she "was very clear in direct, made good eye contact, responded appropriately to the [c]ourt. Her . . . testimony was clear. Her body language was clear." The trial court further stated that plaintiff "had a great deal of concern about [defendant's] prior acts of domestic violence, which had not been pled in her restraining order so the [c]ourt cannot consider them, but certainly there is a history of a number of communications back and forth of which [are] . . . harassing in nature." As to defendant, the judge found some inconsistencies in his testimony regarding his communications with plaintiff.

The judge determined plaintiff had proven the predicate act of harassment "based on the nature of the syntax and the language in the texting in [plaintiff's] previous communications with [defendant] that the communications are more

A-0724-20

likely than not to have come from him."  The judge found an FRO was necessary because,

> there was harassment.  . . . there has been a pattern of it . . . .  [Plaintiff] claims she's fearful based on prior physical contact, which the [c]ourt did not consider in determining the harassment, but based on physical abuse, and also a concern going forward with regard to harassment.  That has been continuing for months . . . long after their . . . dating relationship has ended.

Our review of a family court's decision is limited.  Because of the family courts' "special jurisdiction and expertise in family matters[,]" we give special deference to the trial judge's factual and credibility findings.  Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).  We defer to the trial court's factual and credibility findings "when supported by adequate, substantial, credible evidence," Cesare, 154 N.J. at 411-12 (internal citations omitted), and only disturb them if "they are so wholly insupportable as to result in a denial of justice."  Matter of Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (internal citations omitted).  However, our review of the family court's legal conclusions is de novo.  Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019); Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013).

A-0724-20

Defendant asserts the trial judge erred in finding he committed an act of harassment. He contends he did not create any fake accounts, nor did he use them to contact plaintiff. And, even if a fake account is credited to him, the posts did not rise to the level of harassment required to find it objectionable under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35.

Under Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), a trial judge considering the issuance of an FRO must first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts . . . has occurred." Id. at 125. If a predicate act is established, the trial judge must then consider whether the victim requires the protection of a restraining order. Id. at 126. A finding that the predicate act has occurred does not automatically result in the issue of a restraining order. Ibid. (citing Kamen v. Egan, 322 N.J. Super. 222, 227-28 (App. Div. 1999)).

Under N.J.S.A. 2C:33-4

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> > a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
> >
> > . . . .

A-0724-20

> c. Engages in any other course of alarming
> conduct or of repeatedly committed acts with
> purpose to alarm or seriously annoy such other
> person.

The trial court found plaintiff was credible in her testimony and that she established the act of harassment because she "believed" defendant had sent her harassing social media posts. But plaintiff's "beliefs" are not the required substantial credible evidence needed to sustain an offense required for the issuance of an FRO. Moreover, the judge did not make any findings regarding which posts were sent by defendant or how they were alarming or annoying to plaintiff. There were also no findings regarding whether defendant had the requisite purpose to harass.

None of the social media communications provided to the court by plaintiff were under defendant's name. When the judge inquired of plaintiff several times as to how she knew the posts were from defendant, plaintiff parroted the words the judge said earlier in the hearing – repeating it was the "syntax" of the messages.

A review of the record demonstrates a lack of credible evidence to support a finding of harassment. The evidence submitted by plaintiff contained messages written in numerous styles. Each profile was written differently from

the next and differed from communications sent by defendant.  The "syntax" lacked any consistency.

For instance, the fake profile with the name "Shemora Rolluch" reads,

> Look at her [L.B.S.] she doesn't love you she is young a lot of men would love to have her rich men why would you think she wants you . . . I was the one who accept you for what you are do you think she would accept that and she can have someone for herself?

But another profile plaintiff attributed to defendant, by the name "Samantha Guy, " states,

> Yow mi affi chat to yuh . . .  Yuh breed got pickney an tht still nuh enough fi uh . . .  Long tme u a hore . . . Everyday u tex him phone.  Stp cal mi man u ear mi.  U deh faring now top tak ppl man go fine fi u self.

The language used by defendant in his own communications also differs from that in the fake profiles.  In his posts, he often replaced both "are" and "or" with "r."  This substitution is rarely found in any of the fake profiles. Additionally, some of the fake profiles use the word "fi."  This appears to mean "to" or "for."  But it is plaintiff who uses "fi" in some of her messages while defendant does not.  Plaintiff's assertion that both the "syntax" and content of the fake profiles' messages were similar to that of defendant's messages is not supported by the record.

A-0724-20

Defendant testified it was plaintiff who made up the fake accounts. There is evidence to support that argument. For instance, in one of the posts, the writer threatened to inform defendant's wife of the extramarital affair. It would not likely have been defendant who created that post. Another post threatened plaintiff with harm if defendant were ordered to pay child support. But defendant was paying child support and was not in arrears. In addition, several of the fake profiles contacted defendant. It is not likely he sent them to himself.

Even if a predicate act was established, plaintiff did not present sufficient credible evidence that she required a restraining order to protect her "from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

Defendant's uncontested testimony was that he had not seen plaintiff or the parties' child for more than eighteen months. There was no testimony he knew where the two lived. He paid the ordered child support. Although plaintiff stated there was physical contact during the relationship, she did not allege physical abuse in her TRO application and the court did not consider plaintiff's allegations in issuing the FRO. Therefore, plaintiff did not demonstrate the required need for an FRO.

A-0724-20

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION