# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1496-23

A.N.,[1]

    Plaintiff-Respondent,

v.

D.K.,

    Defendant-Appellant.

_____

       Argued October 9, 2024 – Decided October 31, 2024

       Before Judges Currier and Paganelli.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-0875-24.

       D.K., appellant, argued the cause pro se.

       A.N., respondent, argued the cause pro se.

PER CURIAM

---

[1] We use initials to protect the domestic violence victim's privacy. R. 1:38-3(d)(10).

Defendant appeals from an October 24, 2023 final restraining order (FRO) entered against her and in favor of plaintiff, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Because the trial judge made credibility determinations, factual findings that were supported by substantial credible evidence, and correctly applied the facts to the law, we affirm.

We glean the pertinent facts and procedural history from the trial record. The parties are family members. Plaintiff filed a domestic violence complaint and sought a temporary restraining order against defendant alleging defendant harassed her. She alleged that a year and a half before her complaint she "explicitly stated that she did not want contact with" defendant, but defendant "continually harassed" her by: (1) "contacting her multiple times a day by way of phone calls, emails, and voicemails"; (2) going near her dormitory and following her despite being told that plaintiff did "not wish to speak with" her; and (3) "acquir[ing] plaintiff's [dormitory] address" and leaving a package outside the dormitory. Plaintiff complained that she was "constantly on edge because she never kn[e]w[] if . . . defendant [wa]s going to show up [to] where she" was.

2

Both parties testified at the FRO trial. Plaintiff stated that historically, the parties' relationship was "not the best" and perhaps defendant's repeated contact was an attempt to repair the relationship. However, plaintiff testified that she did not want to repair or pursue the relationship any further.

Plaintiff testified that defendant had "been harassing [her] with numerous calls, at least five or more every day at random times . . . for the past year and a half." Plaintiff stated she repeatedly told defendant to stop communicating with her. Plaintiff testified that she blocked defendant's calls, but defendant continued to call plaintiff from blocked numbers. Plaintiff explained she knew defendant called from blocked numbers because defendant left correlating voicemails. Plaintiff explained that defendant would leave many voicemails, four to five minutes long. In one voicemail, defendant referred to plaintiff's address, despite plaintiff having never shared the address with defendant.

Further, plaintiff testified that defendant appeared at her college campus near her dormitory. She described that defendant positioned herself so that plaintiff was required to walk by her. Plaintiff explained that defendant "started following [her] and calling out to" her. Plaintiff stated she "was very scared" and "did[ not] make eye contact" with defendant. When plaintiff had to return

3

to her dormitory, she used a different entrance, and she left the dormitory "in a big group so that [defendant] would[ no]t see" her.

Moreover, plaintiff testified that after the campus incident, defendant sent her a package. Again, plaintiff explained, she never provided defendant with her address.

Defendant testified that she had not seen plaintiff in two years. Defendant testified that she "would call [plaintiff] probably once a day, maybe twice a day." Defendant stated she did not "remember [plaintiff] specifically saying" not to call her. Defendant admitted going to plaintiff's college campus, but explained it was only out of concern for plaintiff's safety. She also admitted that she "call[ed]" out to plaintiff and went to talk to her, but plaintiff walked away. Defendant denied following plaintiff. Further, defendant admitted to sending plaintiff a package but explained that she sent her "something healthy" because it was plaintiff's "favorite."

The judge "found . . . plaintiff's testimony to be very credible." The judge believed plaintiff's testimony that she told defendant to stop communicating with her and that plaintiff's actions—not returning calls, not answering calls, blocking calls—were a clear indication that plaintiff did not want communication with defendant. Conversely, the judge did not believe defendant

when she testified that she did not "really recall" whether plaintiff specifically told her not to contact her and found defendant's conduct continued despite plaintiff's "clear" instructions to defendant that she did not want any contact or communication.

The judge found that defendant committed the predicate act of harassment. The judge found defendant's continued calling of plaintiff—after plaintiff informed defendant that she no longer wanted to have communication and after plaintiff's efforts to stop communication—established "harassment" under N.J.S.A. 2C:33-4.[2]

In addition, the judge found that the entry of a FRO against defendant was necessary because considering the parties' history, plaintiff needed protection to stop defendant from continually contacting plaintiff.

---

[2]  Under N.J.S.A. 2C:33-4:

> a person commits a petty disorderly persons offense if, with purpose to harass another, he[ or she]:  a.  Makes, or causes to be made, one or more communications anonymously . . . or any other manner likely to cause annoyance or alarm;  . . . or c.  Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

A-1496-23

On appeal, defendant contends the trial court erred because: (1) "it held that [defendant] made th[e] calls with no evidence for the same"; (2) plaintiff "mentioned that there ha[d] never been a domestic violence history" between the parties; and (3) "the situation could have be[en] resolved by putting in a civil no order for no contact . . . and ordering [plaintiff into] therapy on [a] regular basis."[3]

Our review of a trial judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs. Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] . . . accord deference to family

---

[3] Defendant raises additional issues on appeal that were not asserted before the trial court. Specifically, the trial court did not: (1) "know[] the history and facts of [plaintiff's] mental state" and plaintiff's "court ordered therapy"; and (2) consider plaintiff's alienation from defendant caused by defendant's ex-husband's influence. We "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Inc. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). Defendant's arguments do not "go to the jurisdiction of the trial court or concern matters of great public interest," ibid., and will not be considered on appeal.

court fact[-]finding." Id. at 413. Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). On the other hand, we will review questions of law determined by the trial court de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"We view the task of a judge considering a domestic violence complaint, where the jurisdictional requirements have otherwise been met, to be two-fold." Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Ibid. "In performing th[is] function, the [PDVA] . . . require[s] that acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties." Id. at 125-26 (quoting Cesare, 154 N.J. at 402).

"The second inquiry, upon a finding of the commission of a predicate act of domestic violence, is whether the court should enter a restraining order that provides protection for the victim." Id. at 126; see also J.D. v. M.D.F., 207 N.J.

458, 475-76 (2011) (quoting N.J.S.A. 2C:25-29(b)) (explaining that a FRO should not be issued without a finding that relief is "necessary to prevent further abuse."). "[T]he Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." Silver, 387 N.J. Super. at 126-27 (quoting Kamen v. Egan, 322 N.J. Super. 222, 227 (App. Div. 1999)).

Here, applying these well-established principles, we find no error in the trial court's entry of the FRO against defendant. The trial court found plaintiff was credible and that plaintiff told defendant numerous times she did not want any contact with her. In addition, the trial court found plaintiff's actions—to prevent communication—clearly indicated that plaintiff did not want communication with defendant. Despite all indications, the court found defendant continuously tried to communicate with plaintiff.

The court's findings were sufficiently supported by credible evidence in the record and established harassment. Moreover, considering the parties' history, the trial court determined a FRO was necessary to protect plaintiff from further harassment by defendant. We discern no reason to upset that conclusion.

Regarding defendant's suggestion that the trial judge should have entered a civil order for no contact, it is inappropriate for a "court . . . [to] initiate or

suggest use of 'civil restraints' in domestic violence cases." See Domestic Violence Procedures Manual, at 65-66 (New Jersey Supreme Court) (2022 ed.). Thus, it would have been improper for the trial court to consider civil restraints in this matter.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION