# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2636-18T4

D.P.,

    Plaintiff-Respondent,

v.

S.M.B.,

    Defendant-Appellant.

_____

        Submitted November 19, 2019 – Decided December 4, 2019

        Before Judges Hoffman and Firko.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-0928-19.

        The Tormey Law Firm, attorneys for appellant (Brent DiMarco, on the briefs).

        Mattleman, Weinroth & Miller, PC, attorneys for respondent (Sheera Geri Engrissei, of counsel and on the brief).

PER CURIAM

Defendant S.M.B.[1] appeals from a February 14, 2019 final restraining order (FRO) entered against her in favor of plaintiff, D.P., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on harassment, N.J.S.A. 2C:33-4. We affirm.

## I.

The following facts were established through the parties' testimony at the FRO hearing. In 2004, plaintiff met defendant while both were students attending college. The parties markedly disagreed regarding the extent of their relationship. According to plaintiff, defendant became a "sexual partner and a friend" over a two-and-a-half-year period through 2006. Plaintiff described their relationship as cordial but that they never officially dated. Plaintiff testified he and defendant only had sex on two occasions but engaged in other intimate behavior throughout their relationship. Plaintiff's response when asked whether he considered the relationship to be a dating one: "I mean, we were – I'd say we were very close . . . I don't know if she was seeing anyone else at the time . . . it was close at times." Plaintiff and defendant never lived together, had no children together, and were never married.

---

[1] We use initials to protect the parties' privacy interests in accordance with Rule 1:38-(d)(9).

A-2636-18T4

Defendant refuted plaintiff's account of their college relationship, claiming the two never dated or had sex. To the contrary, defendant testified she dated a former friend of plaintiff from 2004 through 2006.

After 2006, the parties ended their intimate relationship but remained friends. Plaintiff and defendant both work in human resources, which resulted in intermittent work-related communication between the two. These communications occasionally included personal information, such as plaintiff sharing the birth of his son with defendant. On September 23, 2018, plaintiff reached out to defendant suggesting she should come have a drink at the Morristown Hyatt with some friends after their alma mater's homecoming game. After that, the parties apparently last communicated during a work-related phone call shortly before the conduct in question occurred.

On December 3, 2018, plaintiff's wife received an anonymous call from defendant at work, claiming her husband was unfaithful and begging her to "not be in denial." Plaintiff's wife also began receiving cryptic emails and letters, which were being sent from false addresses, at both work and home, in addition to receiving continued calls at work. Similarly, she received Facebook messages from several fake accounts. In those communications, defendant alleged she had proof of plaintiff's infidelity and requested his wife reach out in order to

3

receive further information. At one point – the parties were not clear as to when – defendant revealed her identity during her continued attempts to contact plaintiff's wife.

Defendant's repeated and unwanted behavior led plaintiff to contact the Aberdeen Police Department, which reached out to defendant and instructed her to stop contacting plaintiff and his wife. Despite the warning, defendant continued to contact plaintiff and his wife. On January 7, 2019, plaintiff filed a domestic violence complaint against defendant. On January 9, 2019, the Monmouth County Superior Court entered a temporary restraining order (TRO) against her. Defendant sent an additional email to plaintiff's wife regarding the TRO that evening.

On February 14, 2019, the parties appeared in court for an FRO hearing. The trial judge allowed the parties to make a record of what they perceived their relationship to have been. The judge concluded plaintiff had testified credibly, and defendant's testimony had been inconsistent and lacked credibility.

Before rendering her oral opinion, the judge questioned plaintiff as to why he needed an FRO against defendant. Plaintiff testified defendant caused a lot of stress and concern for both him and his wife, and his wife is "afraid that [defendant] might be hanging around the corner." Plaintiff added both of their

employers were aware of the situation and they suffer continued embarrassment at work.

From there, the judge questioned defendant regarding her actions. Defendant testified she was simply being a "Good Samaritan" and claimed defendant would use the FRO as a "weapon to shield his wife from receiving further evidence." Defendant alleged she possessed "hundreds of texts" from several women who were prepared to step forward. However, she produced no text messages and was unable to identify anyone who could support her account.

In her oral opinion, the trial judge followed the framework established in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006). First, the judge found the court had jurisdiction, concluding plaintiff proved, by a preponderance of credible evidence, the parties two-and-a-half year intimate relationship constituted a "dating relationship" under the PDVA, N.J.S.A. 2C:25-19(e). The judge then concluded plaintiff proved the predicate acts of harassment, N.J.S.A. 2C:33-4, and cyber harassment, N.J.S.A. 2C:33-4.1. The judge found defendant used both traditional means of communication and social media mediums with the purpose of inflicting emotional harm on plaintiff and his wife; inferring the intent to cause annoyance and alarm from the attendant circumstances surrounding the messages and defendant's explanation for her conduct. The

judge also found an FRO was needed, finding that absent a restraining order, defendant would continue her attempts to communicate with plaintiff and his family. As a result, the judge entered the FRO under review.

On appeal, defendant contends 1) the parties did not have a dating relationship; 2) defendant did not commit the predicate act of harassment; and 3) an FRO is not needed to protect plaintiff.

II.

Our review of a trial court's decision to enter a FRO in a domestic violence matter is limited. Peterson v. Peterson, 374 N.J. Super. 116, 121 (App. Div. 2005). "A reviewing court is bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "Reversal is warranted only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms

Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts[.]" Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

The PDVA protects victims of domestic violence by permitting the entry of restraining orders. N.J.S.A. 2C:26-29. A "victim of domestic violence" includes, among others, "any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship." N.J.S.A. 2C:25-19(d). The PDVA does not define a "dating relationship" and our Legislature left it to the courts to determine what relationships might be properly characterized as such. In Andrews v. Rutherford, 363 N.J. Super. 252, 260 (Ch. Div. 2003), the court considered six factors in determining whether the parties had a qualifying dating relationship:

> 1. Was there a minimal social interpersonal bonding of the parties over and above a mere casual fraternization?
>
> 2. How long did the alleged dating activities continue prior to the acts of domestic violence alleged?
>
> 3. What were the nature and frequency of the parties' interactions?

4. What were the parties' ongoing expectations with respect to the relationship, either individually or jointly?

5. Did the parties demonstrate an affirmation of their relationship before others by statement or conduct?

6. Are there any other reasons unique to the case that support or detract from a finding that a "dating relationship" exists?

[Ibid.]

Andrews cautioned that although "none of these factors may be individually dispositive on the issue, one or more of the factors may be more or less relevant in any given case depending on the evidence presented." Ibid. These factors are liberally construed. Ibid.

Upon finding jurisdiction exists and the PDVA applies, a trial judge adjudicating a domestic violence case has a "two-fold" task. Silver, 387 N.J. Super. at 125. The judge must first determine whether the plaintiff has proven, by a preponderance of credible evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a), which incorporates harassment, N.J.S.A. 2C:33-4, as conduct constituting domestic violence. Id. at 125-26. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the

perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); see N.J.S.A. 2C:25-29(a)(1).

A finding of harassment requires proof that the defendant acted "with purpose to harass." N.J.S.A. 2C:33-4; see Silver, 387 N.J. Super. at 124. Although a purpose to harass may, in some cases, be "inferred from the evidence," and may be informed by "[c]ommon sense and experience[,]" a finding by the court that the defendant acted with a purpose or intent to harass another is integral to a determination of harassment. State v. Hoffman, 149 N.J. 564, 577 (1997). Its establishment requires proof that it was the actor's "conscious object to engage in conduct of that nature or to cause [the intended] result." N.J.S.A. 2C:2-2(b)(1). A plaintiff's assertion that the conduct is harassing is not sufficient. J.D. v. M.D.F., 207 N.J. 458, 484 (2011). Further, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Id. at 487.

Once a plaintiff establishes a defendant committed one or more of the enumerated predicate offenses, the judge then assesses "whether a restraining order is necessary, upon evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to (6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 475-76 (quoting Silver, 387 N.J. Super. at 127). Those factors are:

A-2636-18T4

1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

2) The existence of immediate danger to person or property;

3) The financial circumstances of the plaintiff and defendant;

4) The best interests of the victim and any child;

5) In determining custody and parenting time the protection of the victim's safety; and

6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

A judge considering these factors must exercise care in order "to distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence." R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017). The Act is not intended to encompass "ordinary domestic contretemps[.]" Corrente, 281 N.J. Super. at 250. Rather, "[t]he [Act] is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)).

Here, we are satisfied the record contains sufficient credible evidence to support the judge's finding that the parties were in a dating relationship. The parties' history, as recounted by plaintiff, results in finding a dating relationship existed. The parties engaged in regular intimate behavior, including sex, for a period of two-and-a-half years. This relationship is distinguishable from a relationship we concluded did not constitute a dating relationship in S.K. v. J.H., 426 N.J. Super. 230, 233 (App. Div. 2012), which defendant contends is comparable. There, the parties never met before attending a large group vacation. Id. Following a group function, the defendant walked back to the hotel with the plaintiff and attempted to kiss her, but she pushed him away. Id. In response, the defendant assaulted her causing severe injuries. Id. In contrast, the parties here engaged with one another romantically on multiple occasions over a significant period of time. Furthermore, the fact that the relationship ended in 2006 is not dispositive, considering the relationship extended over an extended period of time, namely two-and-a-half years, and the parties remained in contact thereafter.

We are also satisfied the judge correctly determined the predicate act of harassment was proven by a preponderance of credible evidence. The incessant messages clearly show defendant's intentions were not to simply inform

A-2636-18T4

plaintiff's wife of her husband's alleged unfaithfulness. Likewise, in light defendant's harassing course of conduct which continued after she was contacted by the police, we are convinced the judge's determination that an FRO was required to protect plaintiff and his family finds strong support in the record.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2636-18T4