# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0074-21

E.D.L.R.,[1]

    Plaintiff-Respondent,

v.

R.R.V.-R.,

    Defendant-Appellant.

_____

Submitted September 29, 2022 – Decided October 6, 2022

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-06-2107-21.[2]

Michael Wiseberg, attorney for appellant.

Respondent has not filed a brief.

---

[1] We use initials to protect the parties' privacy and the confidentiality of these proceedings. R.1:38-3(d)(10).

[2] The record intermittently incorrectly refers to the docket number as FV-09-2107-21.

PER CURIAM

Defendant R.R.V.-R. appeals from a final restraining order (FRO) entered against him and in favor of plaintiff E.D.L.R. under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. The Family Part judge found defendant committed the predicate act of harassment, N.J.S.A. 2C:33-4(c), and dismissed plaintiff's complaint insofar as it alleged the predicate acts of criminal mischief, N.J.S.A. 2C:17-3, and terroristic threats, N.J.S.A. 2C:12-3, because the requisite elements for these acts were not established by a preponderance of the evidence.

On appeal, defendant argues the judge erred in finding his filing of a civil lawsuit to collect a debt allegedly owed to him by plaintiff during the pendency of the domestic violence proceedings was frivolous and filed with a purpose to harass plaintiff. Additionally, defendant contends the judge erred by concluding the filing of the civil lawsuit was a factor to be considered when issuing the FRO under Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006).

We have considered defendant's contentions in light of the record and applicable principles of law. Although we affirm the judge's determination that defendant committed the predicate act of harassment, we vacate the FRO and remand for the judge to provide a more comprehensive statement of his findings

A-0074-21

of fact and conclusions of law as to whether plaintiff needs an FRO for her protection under the second prong of Silver.

I.

We summarize the facts found by the trial judge at the hearing. The parties met on an internet website. At the time of the alleged domestic violence, the parties had been in a dating relationship from July 2020 until February 2021. They never married and have no children in common. For most of their relationship, the parties lived together in plaintiff's apartment in West New York with her adult son from a previous relationship until defendant moved out in December 2020. In February 2021, plaintiff moved out of her apartment and lived with defendant at his apartment in Secaucus. She moved out a few weeks later while defendant was at work and returned to her apartment. When defendant realized plaintiff moved out, she claims he called her, got "angry," and told her she had to return to him.

On May 10, 2021, plaintiff alleged defendant called her to meet for breakfast and to sign some papers. According to plaintiff, defendant became aggressive on the phone and told her "if [she] didn't come downstairs to sign the papers, [he] was going to go upstairs and make [her] go downstairs." Twenty minutes later, plaintiff planned to go to the police station and thought she saw

A-0074-21

defendant's car parked behind her car. She went back upstairs and called the police. Upon arrival, the police determined defendant was not in his vehicle or in the area.

On May 10, 2021, plaintiff filed a domestic violence complaint and a request for a temporary restraining order (TRO) against defendant, alleging the facts described above. In terms of prior history, plaintiff described an episode that occurred on April 26, 2021, during which she called her friend and defendant's co-worker, J.L., and asked her to accompany plaintiff to defendant's apartment. Plaintiff and J.L. went to defendant's apartment because he wanted to speak to plaintiff. According to plaintiff, defendant was "furious" and would not accept the fact that their relationship was over. Plaintiff claimed he proceeded to rip her underwear and nightgowns she had left in the apartment with a knife he obtained from the kitchen. Plaintiff also alleged defendant said that "if he sees [plaintiff] with another man, he is going to harm [her]." Plaintiff contends J.L. convinced defendant to let them leave his apartment.

Plaintiff also alleged that in January 2021, defendant "forced" her to put her phone on speaker or video so he could listen in on her conversations. She also claimed if she failed to do so, defendant would get "aggressive." In addition, plaintiff asserted defendant would "hit the table," "break things," and

A-0074-21

get in her face and scream at her if she did not comply. Plaintiff stated that on one occasion defendant grabbed her phone and threw it. The TRO was granted. On June 9, 2021, the complaint was amended to reflect plaintiff had retained counsel. Defendant sought an adjournment of the FRO hearing to consult counsel. The hearing was therefore adjourned.

On July 6, 2021, plaintiff amended her complaint a second time to add new allegations, including defendant's filing of a "frivolous civil suit against [her] requesting compensation for gifts he gave [her]" and for "defaming" defendant in court on May 21, 2021. Defendant had purchased a refrigerator and a stove while the parties resided together, and plaintiff conceded that she accepted approximately $900 from defendant after they separated. Plaintiff also alleged defendant had been "harassing" her niece, S.R., and sent S.R. "pictures of himself with another woman." Plaintiff also claimed defendant harassed other family members about seeking reimbursement for gifts he purchased for her.

The second amended complaint also stated that prior to their breakup, the parties "would get into fights on a weekly, sometimes daily basis." Plaintiff recounted a trip to Florida the parties took in February 2021 to visit her grandson. Plaintiff asserted defendant "was extremely aggressive" towards her, "shouting," and "grabbing [her] by [her] arm." Plaintiff also described an

A-0074-21

occasion during which defendant yelled at her at a restaurant and was "temperamental." The second amended complaint also alleged defendant was a former Navy veteran and was treating with a therapist for "post-traumatic stress disorder." Plaintiff represented she had been diagnosed with a type of bipolar disorder and had been undergoing treatment since September 2020.

Both parties were represented by counsel at the hearing. Plaintiff testified after their relationship ended, defendant would call her on the phone "[s]even, eight times a day," and sometimes she answered the phone. Defendant told plaintiff that she "couldn't drop him," and he insulted her by calling her "stupid," "dumb," and "a bitch." On some occasions, defendant would say to plaintiff she "could not leave him" and she would "be sorry if [she] did, that he was going to make [her] life impossible." Plaintiff submitted records of the phone calls and text messages into evidence corroborating her testimony, including the screenshot of defendant kissing another woman that he sent to S.R. Plaintiff testified she is "very afraid to go outside on [her] own" and that she is "fearful" for her life.

Defendant called J.L. to testify on his behalf. J.L. testified she was certain that defendant did not take out a knife and cut up clothing belonging to plaintiff on April 26. J.L. stated if that had occurred, she would have "absolutely" called

6

the police. J.L. explained that she and the parties sat down, had something to eat, returned a key to defendant, and discussed a payment arrangement between plaintiff and defendant. J.L. testified that following this meeting, she and plaintiff left together without either of them calling the police.

In his oral decision placed on the record at the trial's conclusion, the judge highlighted that "[a]lthough the substance of the calls in their entirety cannot be corroborated by the evidence presented" . . . defendant would "continuously call . . . [p]laintiff." The judge held that the purpose of defendant's text message to plaintiff's niece S.R. depicting him kissing another woman was "not to do anything else but seriously annoy and cause alarm to . . . [p]laintiff." In addition, the judge found the photograph, in combination with the repeated phone calls, "shows that . . . [d]efendant acted with [a] purpose to harass . . . [p]laintiff."

The judge explained defendant's filing of the civil complaint seven days after his receiving the TRO "rise[s] to the level of [a] purpose to harass . . . [p]laintiff." In his decision, the judge emphasized defendant was represented by "competent counsel" and had he spoken to counsel, "I'm sure they would have advised [him] against sending a complaint seven days after a [TRO] was served upon him." Accordingly, the judge concluded defendant committed the predicate act of harassment.

Last, the judge found since "there is a likelihood of reoccurrence [sic] of the continued phone calls, of the messages to family members, there is a need for a[n] [FRO] based on the likelihood of reoccurrence of . . . [d]efendant's actions." Based upon these findings, the judge issued the FRO against defendant and in favor of plaintiff. This appeal followed.

## II.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Id. at 413. Deference is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). A trial judge who observes witnesses and listens to their testimony is in the best position to "make first-hand credibility judgments about the witnesses who appear on the stand." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008).

We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J.

A-0074-21

474, 484 (1974)). However, we do not accord such deference to legal conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the Act is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," J.D. v. M.D.F., 207 N.J. 458, 473 (2011) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe[] [the Act] to achieve its salutary purposes," Cesare, 154 N.J. at 400.

To determine whether the entry of an FRO is appropriate, the trial court must first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver, 387 N.J. Super. at 125. If the court finds a defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126. Here, the court determined defendant

A-0074-21

committed the predicate act of harassment, and we affirm that finding because it is supported by substantial credible evidence.

While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)(1) to (6)],[3] to protect the victim from an immediate danger or to prevent further abuse." Id. at 127; see also J.D., 207 N.J. at 475-76. The second Silver prong "ensure[s] that the protective purposes of the Act are served, while limiting the possibility that the Act, or the

_____

[3] The six non-exclusive factors include:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a)(1) to (6).]

courts, will become inappropriate weapons in domestic warfare," J.D., 207 N.J. at 488, "trivializ[ing] the plight of true victims," Corrente v. Corrente, 281 N.J. Super. 243, 250 (App. Div. 1995).

When concluding under Silver that an FRO is necessary to ensure protection in the future, in some cases, "the risk of harm is so great" that the determination of whether a restraining order should be issued is "perfunctory and self-evident." J.D., 207 N.J. at 475-76, 488. Other cases, however, require an in-depth analysis to determine whether "relief is necessary to prevent further abuse." Id. at 476; R.G. v. R.G., 449 N.J. Super. 208, 228 (App. Div. 2017) ("Commission of a predicate act is necessary, but alone insufficient, to trigger relief provided by the Act."). In all cases, the critical inquiry under the second prong is, after considering the statutory factors, N.J.S.A. 2C:25-29(a)(1) to (6), determining "whether a domestic violence restraining order is necessary to protect [the] plaintiff from immediate danger or to prevent further acts of abuse." Silver, 387 N.J. Super. at 128.

In reaching the determination that a restraining order is necessary, a trial court must also "exercise [care] to distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence." R.G., 449 N.J. Super. at 225, 229-30 (citing J.D., 207 N.J.

A-0074-21

at 475-76) (reversing order granting FRO despite finding the defendant's acts of vulgar name-calling and assault by repeatedly shoving the plaintiff to the ground were "unacceptable and repugnant" because that finding did not support a conclusion that an FRO was necessary for the plaintiff's immediate protection or to prevent further abuse).

Also, although the court may look to other relevant factors not included in the statute, N.T.B. v. D.D.B., 442 N.J. Super. 205, 223 (App. Div. 2015), a court must consider the parties' previous history of abuse in its analysis before determining an act of domestic violence had been committed, Cesare, 154 N.J. at 401-02. This "second prong set forth in Silver requires [that] the conduct [be] imbued by a desire to abuse or control the victim." R.G., 449 N.J. Super. at 228 (citing Silver, 387 N.J. Super. at 126-27); see also Peranio v. Peranio, 280 N.J. Super. 47, 52 (App. Div. 1995) (defining domestic violence as "a pattern of abusive and controlling behavior injurious to its victims").

However, a prior history of domestic violence is not always required to support a court's determination because "the need for an order of protection upon the commission of a predicate act of 'domestic violence' . . . may arise even in the absence of such [a history] where there is 'one sufficiently egregious action.'" Silver, 387 N.J. Super. at 128 (quoting Cesare, 154 N.J. at 402). Here, the judge

12

found there was no history of domestic violence when he considered the second Silver prong.

In deciding the matter and addressing the need for a restraining order to protect the parties, the trial judge did not include any specific evidence of his consideration of the statutory factors under Silver before reaching his conclusion. Rather, the judge expressed concern that the civil action filed by defendant was frivolous without making a specific finding and then he implicitly found an FRO was necessary. The judge also concluded defendant's repeated phone calls and messages warranted issuance of an FRO without making the requisite findings of fact and conclusions of law.

The record is also unclear as to whether the judge would have granted an FRO based on defendant's harassing conduct alone regardless of the filing of his civil litigation. Whether defendant's harassment, filing of his civil litigation, or any other evidence established the second prong under Silver must be determined in the first instance by the trial judge, who had the benefit of observing and listening to the witnesses and considering items moved into evidence.

We also conclude on remand the trial judge must make more detailed findings as to why an FRO was necessary to protect plaintiff. With any bench

13

trial, the trial court has a critically important obligation to "find the facts and state its conclusions of law thereon." R. 1:7-4(a). When a court falls short of meeting this obligation, appellate review is compromised. Kamen v. Egan, 322 N.J. Super. 222, 226 (App. Div. 1999) (citing Curtis v. Finneran, 83 N.J. 563, 569-70 (1980)).

Under these circumstances, we are constrained to vacate the FRO and remand for reconsideration and for a more robust statement of reasons as to why an FRO is warranted under the second prong of Silver. However, by our remand, we do not imply any particular result to the judge's reconsideration of this issue. The TRO shall remain in effect pending the outcome of the remand proceeding.

Affirmed in part, vacated and remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION