# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0693-22

T.L.,[1]

    Plaintiff-Respondent,

v.

J.D.S.,

    Defendant-Appellant.

_____

Submitted on March 20, 2024 – Decided April 16, 2024

Before Judges Firko and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1352-22.

Carlos Diaz-Cobo, attorney for appellant.

Gomperts McDermott & Von Ellen, LLC, attorneys for respondent (Marisa Lepore Hovanec, on the brief).

PER CURIAM

---

[1] We use initials to protect the parties' privacy and the confidentiality of these proceedings in accordance with Rule 1:38-3(d)(10).

Defendant J.D.S. appeals from a September 23, 2022 amended final restraining order (FRO) entered against him, and in favor of his wife, plaintiff T.L., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant contends that the trial court erred in denying his request to consider a fifty-five-minute audio recording and certain photographs at the FRO hearing and improperly concluded that plaintiff needed a FRO to protect her from defendant. Based on our careful review of the record, we conclude defendant has not shown the trial court's evidential rulings were an abuse of discretion. Since plaintiff established the need for a FRO for her protection from defendant, we affirm.

I.

On March 1, 2022, the trial court entered a temporary restraining order (TRO) against defendant on plaintiff's complaint predicated on defendant's physical assault of plaintiff and threat to kill her during the course of an argument that occurred earlier that day. Plaintiff filed an amended domestic violence complaint and an amended TRO was entered on March 8, 2022, detailing: (1) assault, N.J.S.A. 2C:12-1, as the sole predicate act; (2) one prior incident of domestic violence between the parties in May 2021 which had not been reported to law enforcement; (3) defendant's criminal history; and (4) that

defendant was arrested for simple assault stemming from this incident. The amended TRO prohibited defendant from: returning to the residence, engaging in future acts of domestic violence against plaintiff, communicating with plaintiff, stalking, following or threatening her, and possessing firearms or other weapons.

On March 22, 2022, plaintiff filed a second amended domestic violence complaint, adding the predicate acts of terroristic threats, N.J.S.A. 2C:12-3; harassment, N.J.S.A. 2C:33-4; and false imprisonment, N.J.S.A. 2C:13-3. Plaintiff also expanded the factual basis for relief, setting forth that defendant would not allow her to leave the room she was in, ripped clothing from her body and took her cell phone. The second amended complaint also detailed additional past instances of domestic violence, including: in 2020, defendant threw a lamp at plaintiff; in September 2021, defendant chased plaintiff from their home and repeatedly hit and kicked the car she retreated to for safety; and in December 2021, defendant blocked plaintiff from exiting a bathroom she had sheltered in after defendant chased her around the house. A second amended TRO was entered based upon the additional allegations.

On April 14, 2022, the trial court began a hearing (the FRO hearing), which continued on May 3, 2022. Both parties were represented by counsel and

3

testified. No other witnesses were called. At the outset of the hearing, the trial court found it had jurisdiction to consider the entry of a FRO under the PDVA, since plaintiff and defendant were married on February 13, 2021, and resided together until the March 1, 2022 occurrence.

Plaintiff testified at the FRO hearing that on March 1, 2022, she and defendant were having an argument when defendant snatched her cell phone from her hand and said "[t]his is my phone, b[*]tch." Plaintiff retrieved her iPad and retreated into a walk-in closet. Defendant followed, grabbed plaintiff's iPad, and said "[t]his is mine too, b*tch." Plaintiff testified that defendant then stood in the doorway of the closet and would not move to allow her to leave. Defendant yelled obscenities at her prior to running towards her to "flatten" her, grabbing her, and saying "I will f[*]cking kill you," before headbutting her. Defendant let plaintiff go after she said she was going to call the police.

Plaintiff testified that defendant appeared to pretend to cry. After plaintiff asked if he was "fake crying," defendant grabbed her, threw her into a dresser and "choked her up," causing her to yell and scream "get off me." Defendant grabbed her shirt, ripping it before taking hold of her and pushing her into shelves, which came crashing down on both of them.

4

Plaintiff screamed for defendant to get off of her and then tried to run out of the room. As she was attempting to take her phone back, defendant picked plaintiff up and threw her on the bed. When he did that, plaintiff attempted to gouge his eyes out and defendant picked her up off the bed and threw her into a wall. Plaintiff spit on defendant and he called her a "stupid b[*]tch" and grabbed her so that she could not move. Defendant then yelled obscenities at plaintiff, and, in return, plaintiff spit at him several times and screamed back at him.

Attempting to restrain plaintiff, defendant "slam[med] [her] body to the chair." This hurt plaintiff's back, and she began to cry. Defendant let her go, called her a stupid b[*]tch, took her iPhone and iPad, and left the house. There happened to be police officers outside the house in a construction area and they came to help plaintiff.

Plaintiff's attorney moved several photographs depicting plaintiff's injuries into evidence. The trial court sua sponte ruled additional photographs of the same injuries were inadmissible as cumulative. When plaintiff's counsel used these additional photographs of plaintiff's injuries later in the trial during cross-examination to ask defendant about specific injuries plaintiff suffered, defense counsel did not object.

A-0693-22

Plaintiff testified to the following prior incidents of domestic violence: (1) in May 2021, defendant grabbed her and left a permanent mark on her arm by body slamming her and causing her back injury; (2) in September 2021, defendant kicked the car she was hiding in and yelled obscenities, (3) in December 2021, defendant blocked her from going outside of her house; and (4) defendant threw a lamp at her in 2020. Plaintiff testified she was seeking a FRO since she was fearful of defendant.

On cross-examination, plaintiff testified that she told the police on March 1, 2022 that defendant had called her a "b[*]tch." Defense counsel attempted to play a fifty-five-minute audio recording of an interaction between plaintiff and police officers during which counsel alleged plaintiff did not relay this information. Counsel sought to impeach plaintiff's credibility with the recording, but the trial court sustained plaintiff's objection due to the length of the recording and since the evidence was only minimally relevant. The statement related only to the predicate act of harassment and was not dispositive because plaintiff had spoken with the officers numerous times and all of their conversations were not captured on the proffered audio.

Defendant testified the parties had an argument that began in another part of the house and ended up with them continuing the argument in the closet.

6

Plaintiff attempted to walk out of the closet and defendant put his hands on plaintiff's waist intending to give her a hug and she "took a swing" at him resulting in defendant "grab[bing] her arms" and asking whether "she had lost her mind." Defendant admitted he "c[ould]" have grabbed plaintiff's shirt when this happened. Defendant testified that he held her arms down for a while and when he let go she tried to kick him, so he grabbed her arms again to hold her down. Defendant testified that his only physical contact with plaintiff was "[m]ostly restraining her," and he did not falsely imprison her nor did he act with an intent to harass her, kick, or shove her. Instead, he grabbed her to try and stop the altercation.

During direct examination of defendant, counsel attempted to elicit testimony establishing that plaintiff did not fear defendant. Defendant testified that plaintiff gouged his eyes and his physical conduct was for self-defense. He asserted that he did not physically imprison plaintiff, kick, shove, offensively touch or harass her. On cross-examination, defense counsel did not object to plaintiff's counsel playing three audio recordings, including one where defendant admitted pushing plaintiff.

Defendant testified that when he moved back into the residence after the TRO was entered, he learned that plaintiff had moved out, taking her belongings

7

and those of her daughter.[2] He saw that there was some damage, stating there were "tons of dishes broken, the bed was broken, some of [his] items were missing" and there were "a lot of things that needed to be cleaned up and thrown away based on the damage left in the house." Plaintiff's counsel objected based on relevancy and defense counsel argued in response that "[t]he conduct of [plaintiff] while she was departing the marital home, knowing that [defendant] was going to be moving back in . . . directly contradict[s] the idea or the belief that [plaintiff] . . . needed a [FRO] to protect herself from [defendant]." The trial court did not strike the testimony, but sustained the objection to defendant moving photographs of the damage into evidence, finding that the condition of the house after the TRO was entered was not relevant.

Defendant also proffered photographs of scratches around his eye and eyelid as the result of the altercation with plaintiff on March 1, 2022, but the trial court precluded the introduction of additional photos as cumulative. Defendant initially denied any prior domestic violence incidences occurred. However, after plaintiff's counsel played an audio recording, defendant admitted

---

[2] The record is unclear as to the age of plaintiff's daughter, as well as her relationship to defendant.

A-0693-22

pushing plaintiff across the room in May 2021 stating, "I admit that I pushed her."

At the conclusion of the hearing, the trial court entered the requested FRO finding plaintiff proved by a preponderance of the evidence the predicate acts of assault and harassment, as well as the need for entry of a FRO to protect her from defendant. The trial court found that although plaintiff alleged harassment, terroristic threats, assault, and false imprisonment as predicate acts, only one predicate act must be established in order for a FRO to be issued. The trial court found that plaintiff established by a preponderance of the credible evidence that defendant attempted to cause, or purposely, knowingly or recklessly caused bodily injury sufficient to constitute simple assault. The trial court found plaintiff to be a more credible witness than defendant and, as a result, concluded that defendant injured her.

The trial court also found that plaintiff established the predicate act of harassment based upon defendant's conduct. The trial court found plaintiff's audio recordings lacked credibility since she was the only one aware the conversation was being recorded and, thus, she could adjust her behavior accordingly. Since the trial court found that assault and harassment were

A-0693-22

established by a preponderance of the credible evidence, it stated that there was no need to address terroristic threats or false imprisonment.

The trial court rejected defendant's assertion that the March 1, 2022 occurrence was a mutual fight, in light of the history of domestic violence between the parties which was established through plaintiff's credible testimony. The trial court found plaintiff credible as to the May, August and September, 2021 domestic violence incidents between the parties and the prior incidents involving defendant's former spouses or girlfriends. The trial court found defendant less credible since he was sometimes evasive and he attempted to contradict his admission to throwing plaintiff across the room, which was confirmed in an audio recording.

The trial court found that a FRO was necessary to protect plaintiff from immediate danger and to prevent further abuse. The arguments that the FRO was not needed because the parties were getting divorced were rejected by the trial court because it did not mean that defendant would not have an opportunity to contact plaintiff, especially since they have children together. The trial court cited A.M.C. v. P.B., 447 N.J. Super. 402 (App. Div. 2016), in support of its conclusion that plaintiff fleeing the marital home and no longer being in immediate danger are not factors weighing against the issuance of a FRO under

10

Silver.[3]  As a result, the trial court ruled that because of the history of domestic violence, and the nature of the predicate offenses, a FRO was necessary to prevent further abuse, regardless of whether the parties divorce.

After the decision was rendered, plaintiff's counsel told the trial court she intended to file a certification of services in support of a request for an order compelling defendant to pay for plaintiff's counsel fees.  The court instructed that plaintiff's counsel was to make defendant's counsel aware when these documents were filed and to follow the proper court processes and procedures for doing so.[4]

On September 23, 2022, the trial court entered an amended FRO awarding $5,950 in counsel fees as compensatory damages under the PDVA payable by defendant to plaintiff's counsel, within thirty days.  Defendant appeals from the September 23, 2022 amended FRO.

II.

Defendant argues on appeal that the trial court erred in prohibiting defendant from playing an audio tape purporting to show that plaintiff's testimony was untruthful and barring defendant's use of photographs allegedly

---

[3]  Silver v. Silver, 387 N.J. Super. 112, 125-27 (2006).

[4]  The record is unclear as to when plaintiff's certification of services was filed.

showing damage to defendant's belongings after the TRO was entered. Defendant also argues that the trial court improperly found "the FRO was necessary."

Plaintiff argues that defendant improperly appealed only the September 23, 2022 amended FRO, which added a counsel fee award and, therefore, we do not need to address the merits of the May 3, 2022 FRO. We are unconvinced that we should view defendant's appeal so narrowly. The September 23, 2022 amended FRO incorporates the FRO protections entered on May 3, 2022, coupled with the fee award. Thus, it is appropriate for us to consider whether the trial court erred in granting the FRO relief on May 3, 2022, which was re-entered by way of the September 23, 2022 amended FRO.

III.

Appellate review of a trial court's decision to enter a FRO in a domestic violence matter is limited. Peterson v. Peterson, 374 N.J. Super. 116, 121 (App. Div. 2005). "A reviewing court is bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011)

12

(quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). A trial judge who observes witnesses and listens to their testimony is in the best position to "make first-hand credibility judgments about the witnesses who appear on the stand." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008).

Further, we "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413). "Reversal is warranted only when a mistake must have been made because the trial court's factual findings are '"so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts." Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Rulings as to the admissibility of evidence or testimony are also governed by an abuse of discretion standard. Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019). Therefore, we "review a trial court's evidentiary ruling only for a

13

'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). The de novo standard of review only governs where the trial court applies the incorrect legal standard to decide an evidential objection. Hassan v. Williams, 467 N.J. Super. 190, 214 (App. Div. 2021). See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011).

## IV.

We address defendant's argument that the trial court's evidential rulings deprived him of a fair hearing. Defendant first posits that the trial court improperly ruled that it would not consider a fifty-five-minute audio tape of a conversation between plaintiff and two police officers evidencing plaintiff never alleged defendant called her a "b[*]tch" to show her testimony was untruthful. Defendant also argues the trial court erred in not allowing testimony and photos which he contends establish plaintiff was not in "fear for her life" and did not need a FRO to protect her from defendant.

As to the video recording, defendant has not established the trial court abused its discretion in precluding defendant from playing a fifty-five-minute audio tape which would have established, at best, only that plaintiff did not complain to the police that defendant specifically called her a "b[*]tch" on

March 1, 2022.  There were other conversations between plaintiff and various police officers regarding the March 1, 2022 event in which she may have relayed this expletive.  As a result, under N.J.R.E. 403, the probative value of the evidence was substantially outweighed by interests of judicial efficiency in not allowing a lengthy audio tape to be played.

Nor has defendant established the trial court abused its discretion in precluding him from using photographs to establish plaintiff was not in fear of him because his personal property, including clothing, was in disarray in the apartment when he arrived to retrieve it post-TRO.  Even if plaintiff damaged defendant's clothing, the photographs of damaged clothing bore no relevance under N.J.R.E. 401 to the issues before the court.  There was no abuse of discretion in the determination not to permit the photographs.

V.

In light of our conclusions regarding the evidential issues, we need only briefly discuss defendant's generalized argument that the amended FRO was improperly entered.

Defendant does not take issue with the applicability of the PDVA or the finding of the predicate acts of assault and harassment.  He only contends the

A-0693-22

trial court erred in finding that a FRO was necessary to protect plaintiff from further acts of domestic violence.

We begin by acknowledging that the purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007) (quoting N.J.S.A. 2C:25-18)). Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," J.D. v. M.D.F., 207 N.J. 458, 473 (2011) (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe[] [the Act] to achieve its salutary purposes." Cesare, 154 N.J. at 400.

In order for a FRO to be entered, the two prongs under Silver must be satisfied. Silver, 387 N.J. Super. at 125-27. First, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Satisfaction of this prong is not at issue here.

If a court finds a predicate act occurred, "the judge must [next] determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R. v. M.K.G., 467 N.J. Super. 308, 322

16

(App. Div. 2021). This is done by "an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6)." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127). The factors which the court should consider, if applicable, include but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a).]

"[W]hether the victim fears the defendant" is an additional factor the trial court may consider. G.M., 453 N.J. Super. at 13 (quoting Carfagno v. Carfagno, 288 N.J. Super. 424, 435 (Ch. Div. 1995)). The trial court must determine, pursuant to the totality of the circumstances, whether the FRO is necessary "to protect the victim from an immediate danger or to prevent further abuse." Silver,

387 N.J. Super. at 127; see also N.J.S.A. 2C:25-29(b) (stating "the court shall grant any relief necessary to prevent further abuse").  The inquiry is necessarily fact specific.  Silver, 387 N.J. Super. at 127-28.

Although the trial court is not required to incorporate all of these factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'"  Cesare, 154 N.J. at 401-02 (quoting Peranio, 280 N.J. Super. at 54).  Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment and physical abuse," and on "whether immediate danger to the person or property is present."  Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995).

The trial court must exercise care "to distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence."  R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017).  The PDVA is not intended to encompass "ordinary domestic contretemps."  Corrente, 281 N.J. Super. at 250.  Rather, "the [PDVA] is intended to assist those who are truly the victims of domestic violence."  Silver,

18

387 N.J. Super. at 124 (quoting <u>Kamen v. Egan</u>, 322 N.J. Super. 222, 229 (App. Div. 1999)).

The trial court did not err in concluding the second <u>Silver</u> prong was established based upon consideration of the applicable factors set forth in N.J.S.A. 2C:25-29(a), in addition to whether plaintiff fears defendant. The previous history of domestic violence between the parties, the threats of danger to plaintiff on March 1, 2022, and plaintiff's best interests as a victim of domestic violence all support the issuance of the FRO. A FRO is also necessary to protect plaintiff from future acts of domestic violence based on plaintiff's credible testimony that she was fearful of defendant, who had purposefully tried to physically harm her on prior occasions and had the opportunity to do so in the future.

The multiple prior acts of domestic violence between the parties are engrained in the fabric of their relatively short marriage. Plaintiff testified to various physical altercations and actions taken by defendant to control her through intimidation and violence. Defendant admitted to prior physical altercations. The record in this case clearly depicts a history of physical violence between the parties, which weighs in favor of the entry of a FRO to protect against future abuse.

19

At the FRO hearing, plaintiff confirmed that she was in fact afraid of defendant because he has been physically violent to her. During the March 1, 2022 incident, defendant threatened to kill plaintiff. The trial court's credibility determinations based upon the testimony at the hearing are afforded deference. We are convinced based upon the credible evidence in the record that the trial court did not err in concluding a FRO is necessary to protect plaintiff from defendant.

Our consideration of the FRO hearing record, along with the trial court's credibility findings, and an evaluation of applicable factors set forth in N.J.S.A. 2C:25-29(a), as required by prong two of Silver, supports entry of the September 23, 2022 amended FRO. Therefore, we affirm the September 23, 2022 amended FRO, finding that it is necessary to protect plaintiff from future danger or threats of violence from defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0693-22