# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3242-23

M.H.,[1]

    Plaintiff-Respondent,

v.

R.S.,

    Defendant-Appellant.

_____

Submitted May 29, 2025 – Decided June 23, 2025

Before Judges Currier and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-2658-24.

The Tormey Law Firm, attorneys for appellant (Louis J. Keleher, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the domestic violence victim's privacy. R. 1:38-3(d)(10).

In this appeal, defendant argues the trial court erred in granting plaintiff a final restraining order (FRO) against him pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Because the trial judge made credibility determinations, factual findings that were supported by substantial credible evidence, and correctly applied the facts to the law, we affirm.

The FRO trial spanned three non-consecutive days. The parties were self-represented and testified on their own behalf. In addition, the parties introduced evidence in the form of their text messages.[2]

Plaintiff testified that she and her seven-year-old son lived in an apartment. Defendant had no relation to the son. Plaintiff stated that she and defendant knew each other for approximately eighteen years, dated for the past two years, and were engaged for the last year. She explained that she ended their relationship. She stated she communicated the end of the relationship to defendant: "face to face," "through text message," and later "in front of the police."

Plaintiff testified that defendant told her he was "devastated about [thei]r situation and the breakup happening" and when she did not show up at a dinner

---

[2] The text messages are not part of the record on appeal. We glean the content of the messages from the trial record.

with his family, he "fired [his] gun in his backyard." Plaintiff explained that defendant was admitted to New Bridge Medical Center. Further, while at the hospital, plaintiff testified defendant made phone calls to her and her brother and made statements such as, "[w]hen I leave from here, it will be worse." She stated this "formed more of a fear."

In addition, plaintiff testified that defendant stated "it's all [her] fault, if [she] showed up . . . to the dinner this would've never happened. If [she] answered his text this would've never happened. If the breakup didn't happen this would['ve] never happened."

Plaintiff testified that on May 17, 2024, defendant was parked in front of her apartment building. This concerned her because defendant had previously threatened her and she "didn't feel comfortable speaking to him." She testified that she texted defendant to "leave from the front of [the] building." However, defendant texted:

> I'm gonna f[***]ing die here on your steps. Get a f[***]ing [r]estraining [o]rder or don't f[***]ing bother. I'll f[***]ing show up in front of [plaintiff's son] Monday morning, I promise you. Better f[***]ing talk before it's too late. Go get a f[***]ing [r]estraining [o]rder against me. You will talk to me and no cops, no force will scare me or stop me. I'll f[***]ing go to jail if I have to. I'll go to ten prisons if I have to. I will not stop reaching out until you speak to me. Come with the police, I don't care. I will not accept anyone's orders. I

will go to jail. I will not f[***]ing leave. Come and talk to me before it's too late. Either me or you will not be here tomorrow.

Plaintiff testified she took the messages as a threat.

Plaintiff stated that after about "an hour and a half [of] . . . begging [defendant] to leave" she went to the police. She explained the police escorted her back to her apartment building and defendant was still there. She described that defendant "made a really big scene and argued with the police." According to plaintiff, defendant told the police "that he's not leaving." Plaintiff stated she "asked a friend to . . . pick [her] up" and she "had to leave [by her] backdoor." Plaintiff testified defendant "was there for about six . . . hours."

Plaintiff also testified that defendant got into her building twice, despite a secured entrance, and left "ripped up rose petals in front of [her] door." She took this "as a little bit of a threat" and she "was . . . absolutely . . . scared."

Plaintiff testified that defendant told her he pointed a gun at his ex-wife. She also stated that defendant, in her presence, told her son: "I'm gonna shoot your father in the f[***]ing face." In addition, plaintiff testified that defendant "pushed [her son's father] numerous . . . times."

Plaintiff stated:

I don't feel safe, my son doesn't feel safe, my family doesn't feel safe. And it's unfortunate that [defendant

i]s unpredictable at this point. . . . And like I said, he's unpredictable and I can't sit here and ignore what he says and what he does . . . . So I am scared and I want this [r]estraining [o]rder for the sake of everyone going their separate ways and getting the help that they need.

Defendant testified that he was "a licensed electrician . . . and if th[e] TRO [wa]s not dismissed it may affect [his] professional license and become a really big hardship on" him. He described himself as "a person of high moral character." In addition, he stated he had "been a financial support" for plaintiff and treated plaintiff's son as his own.

Defendant stated the parties' "breakup was on and off until [he] found out that [plaintiff] actually cheated on" him. Defendant acknowledged texting plaintiff's father and brother after "uncovering her betrayal." He also testified he did not fire his gun in the backyard. In addition, he stated it was not a threat when he texted "one of us is not gonna be here to[morrow]." Instead, he explained the message "refer[red] to [him] getting arrested." Moreover, defendant stated he "did not go to [plaintiff]'s house with any malicious intent." Further, he denied placing rose petals on plaintiff's doorway.

The trial court found plaintiff's testimony "credible in all respects." The court noted plaintiff "made good eye contact," "was clear and intelligent," "had a good demeanor throughout the[] proceedings," "she testified with

recollection," and "[h]er testimony was reasonable." In addition, the court found plaintiff's "testimony was largely not contradicted by other testimony or evidence, and, in fact, corroborated to a large extent by . . . defendant's own testimony."

The court also found defendant's "testimony at times was credible and believable, and to a large [extent] corroborat[ed]." However, the court asserted defendant did "not fully appreciate . . . and evidently underestimated his behavior." Moreover, the court found defendant's explanation that his text— "[o]ne of us is not going to be here"—meant one of the parties was going to be arrested, was not credible. The court determined plaintiff's belief that the text was a threat to be more credible.

In considering whether to grant plaintiff an FRO, the trial court first determined "there [wa]s no question [harassment wa]s committed by a preponderance of the evidence by the defendant's actions both in the events leading up to . . . [May] 17th and certainly on [May] 17th."

The trial court determined defendant's actions "were likely to cause annoyance or alarm" and did "alarm and seriously annoy" plaintiff. The court stated "there's nothing more alarming than . . . being outside the residence of someone else on a public street and constantly communicating to the other

6

person that they would not leave without police intervention." The court found the harassment "standard [wa]s easily met many times over in both the physical presence of the defendant, his statements, and his behaviors in the events leading up to his admission to Bergen Regional and thereafter."

Second, the court considered whether plaintiff needed the protection of an FRO. The court determined there were "prior acts of domestic violence . . . includ[ing] threats in front of [plaintiff's] child, . . . threats and intimidating behavior in front of . . . plaintiff as directed to her [son's father], . . . harassment that took place . . . on the heels of the allegations of . . . plaintiff's infidelity and . . . defendant's bizarre behavior in bringing that to the attention of her parent."

Further, the trial court determined there was an "immediate danger to [plaintiff's] person or property." The court noted it was "concerned for . . . plaintiff and her child." The court observed during the trial defendant "exhibited constant emotion" and at times "sobb[ed] almost uncontrollably." The court stated "the behavior on [May] 17th, the amount of hours [defendant] sat [at plaintiff's building] . . . shows a real propensity for him to [e]nsure that his message is being sent and received . . . . It concerns the [c]ourt that he's not over the breakup and that he may look to retaliate." The court entered the FRO against defendant.

A-3242-23

On appeal, defendant contends: (1) plaintiff did not establish he had the purpose to harass her and instead, his actions reflect "'ordinary domestic contretemp[s],' as opposed to domestic violence"; (2) the trial court, "in reaching its improper decision . . . relied upon impermissible hearsay"; and (3) "[p]laintiff's failure to testify to any actual need for a[n] FRO or being in any actual fear of . . . [d]efendant, . . . could not possibly have satisfied" her burden to establish the need for an FRO.

Our review of a trial judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] . . . accord deference to family court fact[-]finding." Id. at 413. Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). However, we review questions of law determined by the trial court de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

8

"We view the task of a judge considering a domestic violence complaint, where the jurisdictional requirements have otherwise been met, to be two-fold." Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Ibid. "In performing th[is] function, the [PDVA] . . . require[s] that acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties." Id. at 125-26 (quoting Cesare, 154 N.J. at 402).

As relevant here, the PDVA includes "harassment," N.J.S.A. 2C:25-19(a)(13); as a predicate act.

Under N.J.S.A. 2C:33-4:

> [A] person commits [harassment] . . . if, with purpose to harass another, he:
>
> > a.  Makes, or causes to be made, one or more communications . . . in . . . any . . . manner likely to cause annoyance or alarm;
> >
> > . . . .
> >
> > c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

"A finding of a purpose to harass may be inferred from the evidence presented." State v. Hoffman, 149 N.J. 564, 577 (1997). "Common sense and experience may inform that determination." Ibid.

"The second inquiry, upon a finding of the commission of a predicate act of domestic violence, is whether the court should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126; see also J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (explaining that an FRO should not be issued without a finding that relief is "necessary to prevent further abuse" (quoting N.J.S.A. 2C:25-29(b))). "[T]he Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." Silver, 387 N.J. Super. at 126-27 (quoting Kamen v. Egan, 322 N.J. Super. 222, 227 (App. Div. 1999)).

Applying these well-established principles, we find no error in the trial court's entry of the FRO against defendant. The court determined that defendant committed the predicate act of harassment. The court's factual findings are supported by the credible evidence in the record and its analysis of the facts under the statute is appropriate. Moreover, the court correctly evaluated

defendant's acts in light of his prior acts of domestic violence including defendant's prior harassing behavior.

Defendant's contention that plaintiff did not establish that he had the requisite purpose to harass her, and his actions were "ordinary domestic contretemps," is belied by the evidence in the record. Considering defendant remained in front of plaintiff's apartment for hours and the nature and tone of his text messages, "common sense and experience" informed the trial court's determination as to defendant's purpose. See Hoffman, 149 N.J. at 577.

Moreover, we are satisfied that plaintiff's hearsay testimony, regarding defendant's prior use of a gun, was properly admitted. Plaintiff testified that defendant told her about firing the gun. "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." N.J.R.E. 801(c). Under the Rule, defendant was the declarant, "the person who made the statement." N.J.R.E. 801(b). Without an exception, "[h]earsay is not admissible." N.J.R.E. 802.

N.J.R.E. 803(b)(1) provides for an exception when a "statement is offered against a party-opponent and is . . . the party-opponent's own statement."

11

Therefore, under the exception, defendant's statement "is not excluded under the hearsay rule." N.J.R.E. 803.

Finally, the trial court determined an FRO was necessary. Defendant argues plaintiff did not testify that she needed an FRO or that she was in fear of him, and therefore, she could not establish she needed protection. However, plaintiff testified that she had "fear" and consistently testified she was "scared" of defendant. The court determined there was an "immediate danger to [plaintiff's] person or property." In reaching its decision, the court noted defendant's harassing behavior, its concern for plaintiff and her child, defendant's behavior during the trial, and its concern that defendant was "not over the breakup and that he may look to retaliate." These findings are amply supported in the record and will not be disturbed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division